**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRAPT EVERYTHING ENTERAINMENT, an Ohio corporation,** | ) ) ) | |
| **Plaintiff** | ) ) | |
| **v.** | ) ) | **Case No.** |
| **UNIVERSAL MUSIC PUBLISHING GROUP, a California coroporation, SPOTIFY USA, INC., a New York corporation, and, BERTELSMANN MUSIC GROUP, a New York corporation,** | ) ) ) ) ) ) ) | **JURY DEMAND** |
| **Defendants** | ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, TRAPT EVERYTHING ENTERTAINMENT "(Trapt"), an

Ohio corporation, by and through its attorney John M. O'Toole of O'Toole Law Firm, LLC. and

for its claims against Defendants, UNIVERSAL MUSIC PUBLISHING GROUP ("Universal"),

a California company, SPOTIFY USA, Inc., a New York corporation, and, BERTELSMANN

MUSIC GROUP ("BMG"), a New York corporation, collectively, ("Defendants"), and states the

following:

## PARTIES

1.      Trapt is located at 4650 Imperial Dr., Liberty Township, OH. 45011. Trapt does

business in all 50 states and is a resident and citizen of the state of Ohio.

1

2.      Universal is an international corporation with global headquarters in Hilversum, Netherlands. Universal's operational headquarters are at 2200 Colorado Avenue, Santa Monica, California, 90404. Universal does business in all 50 states and is a resident of Illinois and citizen of California.

3.      BMG was a division of a German media company Bertelsmann before its completion of sale of the majority of its assets to Sony Corporation of America on October 1, 2008. Sony Corporation of America ("Sony")has its headquarters at 25 Madison Avenue, New York, New York, 10010. It is one of 988 subsidiaries of Sony, Kabushiki Kaisha (Sony Corporation), a publicly owned Japanese company.  BMG does business in all 50 states and is a resident of Illinois and citizen of New York.

4.      Spotify's global headquarters is in Stockholm, Sweden , with a United States operational center at 4 World Trade Center, New York, New York 10007. Spotify does business in all 50 states and is a resident of Illinois and citizen of New York.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction insofar as federal questions are involved under 17 U.S.C. §§ 101-810 (eff 1978) a/k/a The Copyright Act of 1976.

6.      This Court also has jurisdiction based on diversity under 28 U.S.C. § 1332 insofar as the Plaintiff does not have the same residency and/or citizenship of any Defendant and the amount in controversy is greater than $75,000.

7.      Venue in Chicago is appropriate under 28 U.S.C. § 1391(b)(2)  insofar as a substantial part of the events or omissions giving rise to the claim occurred in Chicago, or a

substantial part of the property that is the subject of the action is situated in Chicago. All Defendants do a substantial amount of business in the state of Illinois.

## FACTUAL ALLEGATIONS

8. Trapt is a platinum music band with 8 million listeners and 1.5 billion streams.

9. Universal is a North American music publishing company and is part of the Universal Music Group. It was formerly known as MCA Music Publishing until it merged with Polygram. Universal is the world's second largest music publishing company, behind Sony Music Publishing. Universal's catalogue consists of over 3 million songs, with offices in over 30 countries.

10. BMG was a division of a German media company Bertelsmann before its completion of sale of the majority of its assets to Sony on October 1, 2018. Although it was established in 198, the music company was formed as RCA/Ariola International is 1985 as a joint venture to combine the music label activities of RCA's RCA Records division and Bertelsmann's Artists Records and its associated labels which include Arista Records. It consisted of the BMG Music Publishing company, the world's largest independent music company share of the joint venture with Sony Music, which established the German American Sony BMG from 2004 to 2008.

11. In November of 2012, Trapt made an album called "Reborn Deluxe." A man named Dennis Sanders ("Sanders") and an investor named Tinge Williams approached the band to make a new album for the first release of a new independent label with distribution through the new Caroline/EMU/Universal arm. This album was ready to go. EMI started to market the album without a signed deal in place.

3

12. Plaintiff was persistent in asking Sanders for a written agreement. The album came out – but still no written agreement! Plaintiff had a real fear that Sanders and/or Williams would just take the money in the pipeline from the first few weeks of sales. Trapt did later made a tentative verbal deal with Sanders and FOF entertainment group – a sublabel using EMI Group Limited (Universal).

13. From January of 2013 to June of 2014, once it became obvious that Sanders and Trapt were not going to come to terms, Plaintiff instructed his lawyer Larry Castruita ("Castruita") to tell Caroline/EMI/Universal to take down the album from all outlets. This was accomplished except for Spotify.

14. In January of 2013, the deal referenced above fell apart. Trapt contacted EMI Group (Universal) to freeze any payments to FOF.

15. On June 5, 2013, Trapt's lawyer, Larry Castruita ("Castruita"), sent a letter to FOF and EMI/Caroline at their offices demanding that they take down the album "Reborn Deluxe." They did as requested except for Spotify. Universal is still claiming the rights to the Reborn 17 track deluxe version. Spotify wrote back in mid-March of 2013 that they would investigate it and on April 27, 2013 told Castruita the same thing and could find no violation..

16. Later in June of 2013, Trapt signed a distribution deal with The EndADA ("ADA"). At this time, both Trapt and Castruita were led to believe that EMI had taken down "Reborn Deluxe" from all Digital Signal Processors ("DSP's").

17. In August of 2013, Trapt executes a written distribution deal with THE END/ADA ("ADA"). ADA uploads the Reborn 13-track version to all DSP's. At this point, Plaintiff was only receiving statements from ADA., and, was unaware that Universal had *not* taken down the Reborn Deluxe 17-track version from Spotify.

18.     Universal was supposed to have taken down in 2014 an album of the Plaintiff that they were sitting on. This is because there was a settlement with one of their sub-labels. There had not previously been a written contract between Trapt and Universal and this why the take-down was of even greater performance.

19     Universal did take down the album on every site save for Spotify. Since then, the album has gotten 40 million streams and they (Spotify) have since been collecting and keeping Plaintiff's money (royalties) on 17 tracks, without Plaintiff's authorization or permission.

20.     Plaintiff's album had been registered with the U.S. Copyright Board since 2013 under SR0000732416, effective 2/15/2013..

21.     Additionally, Universal was distributing an album that Plaintiff's new distributor was also uploading to Spotify (a 13-song version as opposed to a 17-song version). For close to 8 years, Plaintiff had an album getting millions of streams every year and had no clue he was being short-changed, and, only found out on or about in January of 2021.

22.     This directly affected Trapt's band marketing plans insofar that they didn't have the funds to actively go out and generate additional revenue.

23.     As mentioned above, Plaintiff's album was taken down everywhere except Spotify. Universal left it up all those years (from 2013 to the present). Neither Spotify nor Universal have any contractual and/or copyright permitting them to distribute the Trapt "Reborn" album from any app. Plaintiff has requested that they respond to numerous requests to take it down but they have failed to do so.

24.     In May of 2014, Sanders and Chris Taylor Brown ("Brown") came up with a deal on how to split up the money with EMI. EMI agreed and released over $200,000 in withheld funds. Brown was forced to accept a 50/50 arrangement regarding withheld money, or nothing

would be released.

25.     In August of 2018, Spotify drops Trapt's algorithmic play by 75-90% prior to a politically charged song called "Come Together" with a guest performer who is a large political influencer and rapper named "An0maly." This came after a Facebook campaign announcing the collaboration. Spotify did this to hurt the song's chances of reaching fans of Trapt. All those people who would have heard various Trapt songs with that algorithmic radio play, will now not hear the new music that they are releasing.

26.     In the first quarter of 2020, Spotify takes Trapt off "2000s rock anthems" playlist and 4 other major playlists for what can only be attributed to political opinions.

27.     In May of 2020, Sanders contacted Brown inquiring if he would be interested in putting out a album through his distributor, Ingrooves Distribution in May of 2020..

28.     In late summer of 2020, and after downloading the Spotify for Artist's app. Plaintiff discovers that "Reborn Deluxe" had received 40 million streams and not one statement from Universal.

29.     In July of 2020, Trapt releases the "Shadow Work" album.

30.     Brown notices for the first time, in January of 2021, through the Spotify For Artists App ("App"), that the "Reborn Deluxe" album streams, have gone up tremendously since 10.15.2016. Brown had used this App only once before when fans told him that another album had been taken down by ADA in April of 2020. All the royalty statements received from The End/ADA from 2014-2020 did not include this large number of streams from Spotify which were obviously for "Reborn Deluxe" as Trapt only had a 13-song version with The End/ADA that was up on Spotify.

31.     The Trapt version of "Reborn Deluxe" got cut out from the EMI version. Ergo,

EMI received all the streams and all the royalty payouts.

32.     From August through December of 2020, the Bertelsmann Music Group

("BMG") had taken over distribution from for the ADA and was to told that they would reach

out to Universal. There was numerous e-mail correspondence on this issue.

33.     Sanders received no statements from EMI, but, acknowledged seeing payments

over the years but didn't know what they were for.

34.     In January of 2021, BMG told Trapt that there was nothing they could do

regarding these "old royalties" but would make sure that the repertoire was changed over.

Universal and BMG correspond back and forth for a year with no result to show for it.

35.     In the first quarter of 2021, Spotify at various times, prior to any release, guts

algorithmic radio play for the same reasons as 2018.

36.     In January of 2022, Brown finds out that BMG had not collected any royalties

from Universal, nor had they attempted to get royalties flowing back to the proper rights holders.

37.     In March of 2022, Universal contacted Castruita advising that they "will look into

this" but, again, nothing happened from Universal, nor had they attempted to distribute royalties

flowing back to the proper rights holders, *i.e.* Trapt..

38.     In May/June 2022, Trapt starts @traptofficial and very quickly starts to go

viral. Dozens of comments of the singer of the band are deleted, while followers of large

creators are incited to harass Plaintiff and Trapt fans following @traptofficial.

39.     In the summer 2022, it is announced that Trapt will release another politically

charged song called "Ignorance Is Bliss" in July of 2022. Over the next few month, as with the

2018's "Come Together," algorithmic radio play is again cut by Spotify to bare bones (by 90%

going into November/December). Trapt is forced to abandon the release and formulate a new

plan.

40.     In August of 2022, BMG uploads the 17 track "Reborn Deluxe" to Apple Music which they were not allowed to distribute. The reason why BMG did this is not known. Only the 13 song "Reborn Deluxe" version, with a specific catalog number, was licensed to ADA. BMG engaged in copyright infringement for the 4 songs.

41.     In November of 2022, Trapt starts @traptmusic and @traptacoustic.

42.     In December of 2022, Castruita sends "take down notices" to both Spotify and Universal, but his efforts were rebuffed..

43.     At the end of 2022, Castruita sent notice to Spotify that Universal is not a rights holder  of any kind, which Spotify contests.

44.     The above-identified actions by Universal, Spotify and BMG have hurt Plaintiff financially because instead of focusing on streams, they (Trapt) was focusing on selling digital singles and albums. Universal, Spotify and BMG have all intentionally, willfully, and blatantly stolen Trapt's music.

45.     In January of 2023, Trapt received the regular amount of algorithmic play that they had received for the last 3 years. In the very first week in January of 2022, Trapt's songs go back into that regular rotation, and the band receives the most streams due to saved songs in a month ever, approximately 40,000 to 70,000 in just a month.

46.     Then, Spotify punishes Trapt for this success by immediately taking it out of that regular algorithmic play to the lowest weekly amount ever - 300,000 streams in a week down to 60,000. Trapt recovers after and goes up to 200,000 to 250,000 streams a week.

## COUNT I – COPYRIGHT INFRINGEMENT

47.     Trapt restates and realleges paragraphs 1-46 and incorporates same in paragraph 47 of **Count II**.

48.     Trapt registered copyright SR0000732416, effective 2/15/2013, and is the creator and owner of the copyright.

49.     Copyright infringement occurred when a copyrighted work is distributed, copied, publicly displayed or performed, and/used to inspire a derivative work without the copyright owner's permission.

50.     Universal has been keeping royalties not owed it per paragraph 19 and therefore Breached Trapt's copyright.

51.     Universal has been violating Trapt's copyright since 2013 when they were notified that they had no rights to distribute ANY of Trapt's music and did so on their own.

52.     Universal was also claiming distribution rights to Trapt's "Reborn Deluxe" 17-tqack album. No such rights were ever transferred or issued to them.

53.     Spotify never remitted any streaming money to Trapt referenced in paragraphs 30-31.

54.     BMG also infringed on Trapt's copyright but not collecting royalties from Universal as referenced in paragraphs 36-37. They also infringed on Trapt's copyright by distributing the "Reborn Deluxe" album to Apple without authorization.

54.     The earliest that Trapt found out about the on-going and continuous copyright infringements, specifically the non-remittance of royalties and/or other copyrighted entitled payments by all Defendants, was in January of 2021.

55.     Defendants Universal, Spotify, and BMG violated Trapt's exclusive rights to the Work, and  profited thereby thus depriving Trapt of monies due and owing under his copyright.

WHEREFORE, for the reasons stated above, Plaintiff is entitled to the following:

A.   Civil damages in the amount in excess of $100,000.

B.   Fines against each Defendant for $750 to $30,000 per work infringed, or,

$150,000 for willful infringement.

C.   Court costs.

D.   Attorney fees.

Respectfully Submitted By,   John M. O'Toole
Attorney for Plaintiff

John M. O'Toole
Attorney No.:      6199003
Firm:              O'Toole Law Firm, LLC
Address:           150 S. Wacker Drive, Suite 2400, Chicago, IL. 60606
Phone:             (312)560-8981
FAX:               (312)546-5123
E-Mail:            john@otoolelaw.net